UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GARFIELD WILLIAMS,

                              Plaintiff,

        v.

WESTCHESTER MEDICAL CENTER
HEALTH NETWORK, *et al*.,

                              Defendants.

No. 21-CV-3746 (KMK)

<u>OPINION & ORDER</u>

KENNETH M. KARAS, United States District Judge:

<u>Appearances</u>:

Garfield Williams
Bronx, NY
*Pro Se Plaintiff*

Daniel D. Schudroff, Esq.
Leo Ernst, Esq.
Jackson Lewis P.C.
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Garfield Williams ("Plaintiff"), proceeding pro se, brings this lawsuit, pursuant to 42

U.S.C. § 1981 ("Section 1981"), 42 U.S.C. § 2000e (Title VII of the Civil Rights Act or "Title

VII"), 29 U.S.C. §§ 2601 et seq. (Family and Medical Leave Act or "FMLA"), New York State

Human Rights Law ("NYSHRL"), and N.Y. Lab. Law §§ 196-B, 198, 741, against Westchester

County Health Care Corporation ("WCHCC"), Marcela Steger ("Steger"), Jason Yoakum

("Yoakum"), and Kenneth Osario ("Osario") (with Steger and Yoakum, "Individual

Defendants") (collectively, "Defendants").  (*See generally* Third Am. Compl. ("TAC") (Dkt.

No. 78).)  Before the Court is Defendants' Motion to Dismiss the TAC in its entirety (the "Motion").  (*See* Not. of Mot. (Dkt. No. 81).)

For the following reasons, Defendants' Motion is granted in part and denied in part.

I.    <u>Background</u>

A.  <u>Factual Background</u>

1.  <u>The Parties</u>

Unless otherwise stated, the following facts are drawn from Plaintiff's Third Amended Complaint and are assumed true for the purpose of resolving the instant Motion.  *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023) ("The factual summary below is derived from the allegations in the [complaint], which we must accept as true in reviewing a motion to dismiss".)

Plaintiff is a Patient Care Technician ("PCT").  (TAC ¶ 21.)  Plaintiff trained for seven years at the Young Adult Institute in the Bronx and has also "earned several certifications in providing medical care to special needs children and adults."  (*Id.*)  In his role as a PCT, Plaintiff assists nurses and doctors and "prepares for operations."  (*Id.*)  Specifically, Plaintiff's responsibilities included setting up equipment, sterilizing and drying surgical tools, moving patients between rooms, sanitizing rooms, cleaning up after surgeries, and assisting doctors and nurses in any other task that required assistance.  (*Id.* at ¶ 27.)  In addition, as a PCT, Plaintiff was responsible for ensuring that all sponges and other "foreign objects" are accounted for such that patients do not leave "the hospital with foreign objects in their inner cavities."  (*Id*. at ¶ 38.)

At the time of the events giving rise to this Action, Plaintiff was employed by WCHCC as a PCT and worked in an operating room in its Hawthorne Facility.  (*Id.* at ¶ 22.)

2

Steger is a Registered Nurse for WCHCC.  (*Id.* at ¶ 3.)  Yoakum is employed by WCHCC and enjoys the title of "Director of Operation Room."  (*Id.* at ¶ 4.)  Osario is the Director of Clinical Operations, and also is employed by WCHCC.  (*Id.* at ¶ 5.)

> 2.  <u>The October 14, 2019 Incident</u>

On October 14, 2019, Plaintiff was cleaning an operating room alongside two other PCTs after an operation.  (*Id.* at ¶ 41.)  Plaintiff alleges that he was collecting the trash and medical waste and putting it "into specially marked trash containers."  (*Id.*)  Plaintiff placed the trash containers in the corner of the room, but pursuant to the direction of a (non-defendant) nurse, did not throw the bags of trash out, as she had just completed surgery and still needed to account for the surgical sponges.  (*Id.* at ¶ 42.)

When Steger arrived in the operating room, she inquired about a bloody bag.  (*Id.* at ¶ 43.)  Plaintiff told her that, as instructed, he cleaned up room 102 and put all the hazardous items into designated bags and kept them there so Steger could oversee the recount of each sponge.  (*Id.*)  However, Steger "demanded Plaintiff go through the trash, find and remove her sponges from the bags," and then "demeaned him by analogizing him to a janitor."  (*Id.* at ¶ 45.)  Moreover, Plaintiff alleges that, while he did not say so to Steger, "it would have been impossible to distinguish her bloody sponges from anyone else's" and that undertaking such a request could have resulted in a miscount.  (*Id.*)  Despite Plaintiff's explanation of the other nurse's instruction, even as Plaintiff tried to satisfy her demand, Steger allegedly "made threats" against Plaintiff, "us[ing] profanity."  (*Id.* at ¶ 46.)

Following this exchange, Plaintiff alleges that he "went to the front desk where a Patient-Center Care Nurse sits" and tried to explain the incident that occurred in the operating room to Vinny Acevedo, a colleague who was on duty at the desk at the time.  (*Id.* at ¶ 49.)  Steger then

"approached and stopped the conversation, cursing and pointing in Plaintiff's face, threatening to get him fired, and demanding that Plaintiff do something in conflict with the directions of the earlier nurse." (*Id.* at ¶ 50.) Plaintiff stated that he then tried to walk away, "but Steger continued her barrage of threats, hostility, and profanity in front of several employees." (*Id.* ¶ at 51.)

3. <u>Reactions to the October 14, 2019 Incident</u>

At some time after Plaintiff's conversation at the front desk with Acevedo, Plaintiff spoke to Yoakum "about the threats, hostility, profanity, and misconduct" of Steger. (*Id.* at ¶ 52.) Plaintiff alleges that as he attempted to explain the situation to Yoakum, Steger made comments about how "Plaintiff's being a male disqualified him from feeling intimidated or afraid," and the fact that their "disparity in size . . . spoke for itself." (*Id.* at ¶ 53.) At around that time, Sherri Witkins, Director of Nursing Perioperative Services, joined the discussion. (*Id.* at ¶ 54.) Plaintiff told both Yoakum and Witkins "the full breath [sic] of [] Steger['s] disrespectful and racist statement." (*Id*. at ¶ 54.) In addition, Plaintiff asserts that after Plaintiff attempted to complain to Yoakum about Steger's behavior, Steger "said words to the effect of '[o]h, big man. Come outside. Are you afraid of little old me?'" and called Plaintiff "'Sonny,' a quiet racial slur akin to 'boy.'" (*Id.* at ¶ 57.)

On October 16, 2019, Plaintiff filed a complaint with WCHCC's Human Resources Department ("HR") regarding the October 14 Incident. (*Id.* at ¶ 60.) After submitting this complaint, Plaintiff "immediately received a call from a member of the Human Resources staff, Joan Bramswig." (*Id*. at ¶ 62.) They discussed "the incident at length, including the racist, sexist statements, and how Ms. Steger threatened to get him fired." (*Id*.)

Plaintiff alleges that while the complaint was pending, rumors "spread throughout the workplace," and Plaintiff "sensed" that the rumors "caused the staff to distance themselves from Plaintiff." (*Id.* at ¶¶ 64–65.) Plaintiff stated that these rumors, dovetailing with the October 14 incident, "caused him to lose confidence in himself and his work performance." (*Id.* at ¶ 65.) Moreover, while Plaintiff's complaint was pending, "[WCHCC] knowingly continued to schedule Plaintiff to work alongside [Steger]." (*Id.* at ¶ 66.)

On October 23, 2019, Plaintiff was scheduled to work with Steger in the Ambulatory Care Pavilion. (*Id.* at ¶ 67.) When Steger arrived, Acevedo immediately advised Plaintiff to call one of Plaintiff's supervisors, Eddie Amponsah. (*Id.*) Amponsah was in charge of the PCTs and Plaintiff's direct supervisor. (*Id.*) Plaintiff alleges that Amponsah rushed over and explained that Steger was never supposed to be in the Ambulatory Care Pavilion, but to clear up the situation, he was going to move Plaintiff to the main OR and another one of Plaintiff's colleagues to the Ambulatory Care Pavilion. (*Id.*)

Plaintiff contends that he considered this to be a "demotion, and a disproportionately negative outcome." (*Id.* at ¶ 68.) According to Plaintiff, "[w]orking in medicine, especially operating rooms, is about building relationships, and showcasing one's abilities to be an asset to the team." (*Id.*) Furthermore, Plaintiff contends that his position in the Ambulatory Care Center made him more likely to "be promoted and recommended for higher positions." (*Id.* at ¶ 70.) Further, Plaintiff alleges that this change in schedule dramatically reduced "[t]he degree of sophistication needed to continue his job." (*Id.* at ¶ 74.)

Plaintiff alleges that this incident prompted him to email HR "advising [HR] that he found it impossible to work with Steger." (*Id.* at ¶ 71.) Plaintiff claims that he "never received a response" to this email from HR and "after weeks of no response from [WCHCC], [Plaintiff]

visited the [HR] department" but was turned away. (*Id*. at ¶¶ 72, 79.) Plaintiff also alleges that he further asked other managers if they had heard anything regarding his complaint but was told by Osario that "nothing would happen to Steger because it was a female world." (*Id*. at ¶ 80 (alteration adopted).)

Thereafter, Plaintiff asserts that his work life and career development was drastically affected. (*Id*. at ¶ 76.) Specifically, his schedule was disrupted and changed because he was forced to move assignments, operating rooms, and switch schedules with other PCTs at a moment's notice in order to accommodate Steger's schedule and presence in the Ambulatory Care Pavilion. (*Id*.)

### 4. The December 15, 2019 Car Accident and Subsequent Events

On December 15, 2019, Plaintiff was involved in a car accident, which caused him several injuries and severe pain. (*Id.* at ¶ 84.) Plaintiff was then arrested in association with the accident and transported to a medical center for evaluation. (*Id*. at ¶ 85.) Plaintiff asserts he missed work at WCHCC on December 15 due to injuries sustained during the car accident. (*Id*. at ¶ 87.) Plaintiff states that he immediately reported the incident to this Supervisors and HR, including Yoakum and Osario. (*Id*.) In the following days, Plaintiff noticed an increase in the pain's severity. (*Id*. at ¶ 88.) Plaintiff "made every attempt to be at work but had no choice [but] to take from his bank of sick days" due to the pain he suffered from the car accident. (*Id*.) Plaintiff asserts that he "always provided a doctor's note" or an equivalent to justify his sick days. (*Id*. at ¶ 153.) Moreover, Plaintiff claims that he "made it clear to his supervisors, including [ ] Yoakum and [ ] Osario, that he was still dealing with the effects of the crash, and that he had yet to recover." (*Id*. at ¶ 88.)

Plaintiff claims that his medical issues persisted from the time of the accident to the time of his firing. (*Id*. at ¶ 91.) In addition, from February to March 2020, Plaintiff sought medical care through various appointments. (*See id.* at ¶¶ 91–108.) During this period, Plaintiff contends, he always kept his supervisors aware of the reasons for his sick day usage and provided documentation to his employer about his medical condition, including doctors' notes. (*Id.* at ¶ 111.) In addition, Plaintiff alleges that he directly spoke to his supervisors, including Yoakum and Osario, explaining to them that he had been in a car accident, and that due to that car accident he was experiencing serious pain in his neck and back, which was making it difficult for him to work, and as a result, he was using his sick time and vacation time to recover. (*Id*. at ¶ 112.)

Plaintiff claims that despite his pain and discomfort from his back and neck, he returned to work at WCHCC on February 11, 2020. (*Id.* at ¶ 118.) On the same day, Plaintiff states that he discussed his situation with Acevedo, explaining that he was still feeling serious pain due to the accident. (*Id.* at ¶ 120.) Plaintiff alleges that Acevedo advised Plaintiff to apply for FMLA – Short Term Disability, which Plaintiff attempted to do that day. (*Id*.) However, Plaintiff claims that before he could finish filling the FLMA forms out and filing them with HR, Plaintiff was approached by Yoakum, who said "you think you leaving, (referring to FMLA application) let me talk to you at 2:30PM in Kenneth Osario Office." (*Id.* at ¶ 124.) Plaintiff believed that Yoakum's request was an attempt to intimidate Plaintiff into not applying for FMLA. (*Id*. at ¶ 127.)

The next day, February 12, 2020, Plaintiff states that Yoakum approached Plaintiff and stated, in front of several of Plaintiff's peers, "you never came to [Osario's] [o]ffice, you are stealing time, you are going to be fired." (*Id.* at ¶ 130.) During this exchange, Plaintiff claims

that Yoakum was making the threats to Plaintiff, indicating that Plaintiff was going to be fired for attempting to apply for FMLA. (*Id*. at ¶ 132.) Shortly thereafter, Osario and Sherri Witkins, who was Director of Nursing Perioperative Services, arrived and Plaintiff explained to them that he was being harassed and wrongly accused by Yoakum, and that he would prefer to speak to HR because Yoakum was attempting to interfere with Plaintiff's FMLA application and his previous complaints to them about harassment were brushed off. (*Id*. at ¶¶ 135, 137.) Plaintiff alleges that when he did try to explain the issue to Osario and Witkins, Osario looked at Witkins and Amponsah and said "ooo, this again," which Plaintiff understood to be a reference to Plaintiff's previous complaints about a hostile work environment involving Steger. (*Id*. at ¶ 138.)

Plaintiff claims that, without questioning Plaintiff or any of the other witnesses, or looking at surveillance tape, Osario "sided with" Yoakum, and "threw" Plaintiff out of the building, before Plaintiff could file his completed FMLA paperwork. (*Id*. at ¶¶ 139–140.) Plaintiff alleges that he later learned that Osario and Yoakum reported to HR that Plaintiff had taken unexcused days off and had threatened Yoakum during the February 12, 2020 interaction, which Plaintiff alleges is categorically false. (*Id*. at ¶ 142.)

After he left the building, Plaintiff states that he called HR to get an explanation of Yoakum's accusations and to make sure that his FMLA application would be processed. (*Id*. at ¶ 146.) Plaintiff claims that he was told that HR could not talk to him about it and that he had to wait until he received a letter in the mail. (*Id*. at ¶ 147.)

The next day, Plaintiff received a letter that stated:

Based on your prior record of unscheduled absenteeism and your insubordinate and inappropriate actions displayed on February 11, 2020 and February 12, 2020, please be advised that your employment as a Patient Care Technician at Westchester Medical Center, Advanced Physicians Services, is terminated effective close of business, February 12, 2020.

(*Id*. at ¶ 148 (internal citation omitted).)  Plaintiff asserts, following his termination, WCHCC, Yoakum, and Osario "post[ed] a Wanted Poster" at WCHCC, which alleged that Plaintiff had made threats to staff.  (*Id*. at ¶ 159.)

Plaintiff also contends that Defendants did not cooperate with Plaintiff regarding his no fault Progressive claim for lost wages.  (*Id*. at ¶ 181.)  Specifically, he claims that WCHCC refused to verify his employment with the no-fault insurance carrier, even though the verification would have provided Plaintiff with lost wages and allowed him to pay medical bills related to his accident.  (*Id*. at ¶ 182.)

B.  Procedural Background

Plaintiff filed his Initial Complaint on April 27, 2021.  (Dkt. No. 1.)  On June 15, 2021, Plaintiff filed a letter seeking leave to file an Amended Complaint, ("FAC") (Dkt. No. 15), which the Court granted on July 27, 2021, (Dkt. No. 19). Plaintiff filed the FAC on August 3, 2021.  (Dkt. No. 24.)  On October 20, 2021, Defendants filed a Motion to Dismiss the FAC. (Dkt No. 31.)  On September 27, 2022, the Court issued its Opinion and Order granting Defendants' Motion to Dismiss without prejudice.  (Dkt. No. 41.)  The Court dismissed Plaintiff's duplicative Title VII sex discrimination claim (Count 11); New York Sick Leave Law and contractual claims as abandoned (Counts 8 and 12); and New York Labor Law § 741 claim as withdrawn (Count 9). *See Williams v. Westchester Med. Ctr. Health Network ("Williams I")*, No. 21-CV-3746, 2022 WL 4485298, at *5 n.16 (S.D.N.Y. Sept. 27, 2022).  In addition, the Court dismissed Plaintiff's (1) race and sex discrimination claims under Section 1981, Title VII, and the NYSHRL; (2) retaliation claims under Title VII and the NYSHRL; and (3) FMLA claim, concluding that Plaintiff failed to adequately plead each of his claims.  *See generally id.*

9

Following an extension that the Court granted, Plaintiff filed the Second Amended Complaint on June 30, 2023.  (Second Am. Compl. ("SAC") (Dkt. No. 61).)  On August 14, 2023, Defendants filed their Motion to Dismiss the SAC.  (Dkt. No. 67.)  On March 7, 2024, the Court issued its Opinion and Order, granting Defendants' motion without prejudice.  (Dkt. No. 73.)  The Court again dismissed Plaintiff's duplicative Title VII sex discrimination claim (Count 11); New York Sick Leave Law, contractual claims, and New York Labor Law § 741 claim as withdrawn (Counts 8, 9, 12).  *Williams v. Westchester Med. Ctr. Health Network ("Williams II")*, No. 21-CV-3746, 2024 WL 990153, at *6 (S.D.N.Y. Mar. 7, 2024).  Once again, the Court dismissed Plaintiff's (1) race and sex discrimination claims under Section 1981, Title VII and the NYSHRL; (2) retaliation claims under Title VII and the NYSHRL; and (3) FMLA claim, concluding that Plaintiff failed to adequately plead each of his claims.  *Id*. at *16.

Following an extension of time granted by the Court, Plaintiff submitted the TAC on May 10, 2024.  (*See* TAC.)  On July 11, 2024, Defendants filed their Motion to Dismiss the TAC and their accompanying papers.  (Not. of Mot. (Dkt. No. 81); Mem. of Law in Supp. of Mot. to Dismiss ("Defs. Mem.") (Dkt. No. 82); Decl. of Daniel D. Schudroff ("Schudroff Decl. I") (Dkt. No. 83); Decl. of Daniel D. Schudroff ("Schudroff Decl. II") (Dkt. No. 85).)  Plaintiff filed his Opposition on October 17, 2024.  (*See* Pl.'s Mem. of Law in Opp. to Defs. Mot. to Dismiss ("Pl. Opp.) (Dkt. No. 90).)  Defendants filed their Reply on November 12, 2024.  (*See* Reply Mem. of Law in Supp. of Mot. to Dismiss ("Defs. Rep.") (Dkt. No. 98).)

## II.    Discussion

### A.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a plaintiff's claim based on "failure to state a claim upon which relief can be granted."  Fed. R.

Civ. P. 12(b)(6).  At the motion to dismiss stage, a court must "draw all reasonable inferences in the plaintiff's favor, 'assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'"  *United States v. Medtronic, Inc.*, No. 18-CV-1628, 2024 WL 4165522, at *3 (S.D.N.Y. Sept. 12, 2024) (alteration adopted) (quoting *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011)).

To survive a motion to dismiss, the Supreme Court has held that a complaint "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted). However, "a [plaintiff's] obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  Certainly, if a plaintiff has not "nudged [his] claim[ ] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-

11

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). But when a plaintiff proceeds pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Bailon v. Pollen Presents*, No. 22-CV-6054, 2023 WL 5956141, at *5 (S.D.N.Y. Sept. 13, 2023) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Barkai v. Neuendorf*, No. 21-CV-4060, 2024 WL 710315, at *4 (S.D.N.Y. Feb. 21, 2024) (quoting *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted)). Moreover, where, as here, a plaintiff proceeds pro se, the Court must "construe his complaint liberally and interpret it 'to raise the strongest arguments that it suggests." *Mejia v. Carter*, No. 21-CV-9049, 2022 WL 17653826, at *3 (S.D.N.Y. Nov. 2, 2022) (internal quotations and citations omitted), *report and recommendation adopted*, No. 21-CV-9049, 2022 WL 17624254 (S.D.N.Y. Dec. 13, 2022). Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Barkai*, 2024 WL 710315, at *4 (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008)

12

("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

B. <u>Analysis</u>

Plaintiff's TAC, like the SAC and FAC, includes twelve causes of action against all Defendants. (*See* TAC ¶¶ 210–278.) However, Counts 7 and 11 state identical claims of sex discrimination under Title VII against all Defendants, (*compare* TAC ¶¶ 243–248, *with id.* ¶¶ 263–265), therefore, the Court disregards Count 11 as duplicative. Additionally, Plaintiff voluntarily withdrew Count 8 regarding violations of New York Sick Leave Law, Count 9 as to a violation of New York Labor Law § 741, and Count 12 with regard to breach of contract, (*see* Pl. Opp. at 7), therefore, the Court dismisses these claims.

Plaintiff has eight remaining claims, all of which Defendants move to dismiss for various reasons. First, Defendants argue that the Court correctly dismissed Plaintiff's Title VII and NYSHRL race and sex discrimination claims and Section 1983 race discrimination claim, because Plaintiff failed to plausibly allege that he suffered an adverse employment action arising under an inference of discrimination, and the TAC fails to provide any additional allegations to save these claims. (Defs. Mem. at 9.) Defendants also contend that Plaintiff's NYSHRL race and sex discrimination claims are defective as against WCHCC because Plaintiff failed to timely serve a requisite notice of claim. (*Id.*) Second, Defendants argue that Plaintiff's Title VII and NYSHRL retaliation claims must be dismissed because they are untimely. (*Id.* at 9–10.)

Additionally, Defendants contend that, on the merits, these claims are defective against all Defendants because they are predicated exclusively upon speculative assertions. (*Id.* at 10.) Moreover, with regard to Plaintiff's NYSHRL and Title VII retaliation claims, Defendants argue that even assuming Plaintiff engaged in protected activity, the adverse employment actions he

allegedly suffered were too attenuated in time to demonstrate the requisite causal connection to establish cognizable causes of action. (*Id.* at 10.) Finally, Defendants maintain that Plaintiff's FMLA interference claim is defectively pled in that the TAC fails to satisfactorily allege that Plaintiff was entitled to FMLA leave, provided his employer with notice of his intention to take leave, and that he was denied benefits to which he was entitled. (*Id.*)

As before, the Court addresses these arguments only to the extent necessary for deciding the instant Motion.

1. <u>Race and Sex Discrimination Under Section 1981, Title VII, and the NYSHRL</u>

The Court previously dismissed Plaintiff's discrimination claims pursuant to § 1981, Title VII, and the NYSHRL because it concluded that "Plaintiff failed to plausibly allege an inference of discrimination to survive dismissal." *Williams v. Westchester Med. Ctr. Health Network* ("*Williams II*"), No. 21-CV-3746, 2024 WL 990153, at *7 (S.D.N.Y. Mar. 7, 2024).

As noted in the Court's prior two opinions, at the motion to dismiss stage, "a plaintiff need only give plausible support to a minimal inference of a discriminatory motivation." *Williams II*, 2024 WL 990153, at *7 (quoting *Williams v. Westchester Med. Ctr. Health Network* ("*Williams I*"), No. 21-CV-3746, 2022 WL 4485298, at *7 (S.D.N.Y. Sept. 27, 2022)). "Nevertheless, 'a discrimination complaint must still at a minimum assert nonconclusory factual matters sufficient to nudge its claims *across* the line from conceivable to plausible to proceed.'" *Id.* (alterations adopted) (quoting *Williams I*, 2022 WL 4485298, at *7 (quoting *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014))).

Once again, Plaintiff relies on the same kind of race-discrimination allegations that were deemed insufficient in the Court's prior Opinion. *See Williams II*, 2024 WL 990153, at *7. For example, Plaintiff alleges that Steger referred to him as a "janitor," "big man," "[s]onny," and

14

"little boy," (TAC ¶¶ 48, 57), and that a "Wanted poster" was erected at his place of employment following his termination, (*id*. at ¶¶ 159–160.)

The Court previously held that the terms "big man" and "janitor," while perhaps otherwise demeaning, do not speak to race. *Williams I*, 2022 WL 4485298, at *8. Specifically, the Court held that "big man" was "at best, . . . an aspersion as to Plaintiff's size and underhandedly implie[d] a lack of intelligence." *Id*. As to Steger's analogizing Plaintiff to a "janitor," the Court held that while demeaning, the term "in no way speaks to Plaintiff's race," and, in fact, that Plaintiff conceded as much when he alleged that the term was "*caste-*pejorative." *Id*.

As to the remaining language, the Court previously that the foregoing comments are "insufficient to raise a plausible claim because Plaintiff 'failed to allege that a decision-maker who had control over Plaintiff's employment or termination made any discriminatory remarks.'" *Williams II*, 2024 WL 990153, at *8 (quoting *Williams I*, 2022 WL 4485298 at *8). This was because "[c]ourts in this Circuit have repeatedly granted motions to dismiss where the inference of discriminatory intent rests on stray remarks made by those outside of the plaintiff's chain of command." *Id.* (quoting *Williams I*, 2022 WL 4485298 at *8). The Court also noted that Plaintiff's allegation that Steger "had 'seniority' over Plaintiff and 'supervisory authority' in the operating room" was insufficient, because Plaintiff had not alleged Steger had any power to hire, fire, or make decisions regarding Plaintiff's employment. *Id*.

Furthermore, Plaintiff's allegation that the "Wanted poster" was "rac[ist] and discriminatory" because of its historical association with the "mischaracterization, demonization, and over policing" of Black men in America, (*see* TAC ¶ 11), does not address the Court's conclusion that the poster "does not state that Plaintiff is wanted 'but that he is not permitted to

15

access WCHCC unless he is being treated or if he is authorized to enter for a business transaction,'" *Williams II*, 2024 WL 990153, at *8 (quoting *Williams I*, 2022 WL 4485298 at *8).  It also remains true that, "the poster states expressly that the reason he is not permitted to enter [is] because he has made threats against the staff." *Id*. (quoting *Williams I*, 2022 WL 4485298 at *8.)  As a result, the Court maintains its previous conclusion that the poster is insufficient to raise an allegation of racial discrimination.  In sum, because Plaintiff's race discrimination allegations are substantially the same those alleged in the SAC, they are insufficient to plausibly allege that Plaintiff was discriminated against on the basis of his race.

As before, Plaintiff alleges that he is the victim of sex discrimination because (1) Steger's sex-based insults, (2) Osario's statement that "it is a female world" in response to Plaintiff's inquiry about his HR complaint, (3) his medical complaints were not taken seriously, because he is a man and (4) the differential response to accusations of harassment against Steger and Plaintiff.  (*Compare* TAC ¶¶ 138–139 *and id.* at ¶¶ 243–248 *and id.* at ¶¶ 259–262 *with* SAC *id*. at ¶¶ 194–199 *and id.* at ¶¶ 210–213.)

As noted previously, Plaintiff has not alleged that Steger had decision-making authority, and therefore his claims regarding her statements cannot form the basis of a sex-discrimination complaint.  *See Williams II*, 2024 WL 990153, at *8; *Williams I*, 2022 WL 4485298, at *13.  And, as noted before, Plaintiff does not adequately demonstrate a nexus between his firing and Osario's statement.  *See Williams II*, 2024 WL 990153, at *13; *Williams I*, 2022 WL 4485298, at *8–9.

As for Plaintiff's attempt to establish a comparator by pointing out that Steger was not fired for allegedly harassing and threatening him, courts in the Second Circuit have made clear that the use of a comparator in employment discrimination claims is only appropriate where "the

plaintiff's and comparator's circumstances . . . bear a reasonably close resemblance." *Hu v. City of New York*, 927 F.3d 81, 96 (2d Cir. 2019) (quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014); *see also id.* ("A plaintiff can prevail by showing that '[he] was similarly situated in all material respects to the individuals with whom [he] seeks to compare [him]self.'" (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000))). Here, the TAC makes clear that Defendants told Plaintiff the basis of his termination was *both* his "insubordinate and inappropriate actions" and his "prior record of unscheduled absenteeism." (*See* TAC, Ex. H at 80.) Plaintiff does not allege that Steger was alleged to have a similar prior record of absenteeism or its material equivalent, and because unscheduled absenteeism was a material factor in Plaintiff's dismissal, Steger is not an appropriate comparator. *See Herron v. New York City Transit*, No. 15-CV-4842, 2022 WL 1017662, at *8 (E.D.N.Y. Apr. 5, 2022) (rejecting a comparator who also had dual-employment where the plaintiff had an additional "vast record of absences" and the comparator did not), *aff'd*, No. 22-989, 2023 WL 4285816 (2d Cir. June 30, 2023); *Shaw v. McHugh*, No. 12-CV-6834, 2015 WL 1400069, at *10 (S.D.N.Y. Mar. 26, 2015) (rejecting comparators on the logic that even if the plaintiff "could show adequate comparators with respect to either the Energy Pro or Trident contracts . . . Plaintiff does not identify anyone who engaged in conduct similar to Plaintiff's in mishandling *both* the Energy Pro and Trident contracts), *aff'd*, 641 F. App'x 95 (2d Cir. 2016).

Furthermore, Plaintiff's allegation that his medical condition was not taken seriously because he was a man is unsupported by any non-conclusory statements in the TAC. (*See* TAC ¶¶ 128, 171 (alleging, without specific factual support, that Defendants did not take Plaintiff's pain seriously because as a large Black man he was expected to suffer in silence).) Because "a discrimination complaint . . . must at a minimum assert nonconclusory factual matter sufficient

to nudge its claims across the line from conceivable to plausible to proceed," these allegations—as before—are insufficient to support the Plaintiff's sex-discrimination claims. *EEOC*, 768 F.3d at 254 (alterations adopted) (citations and quotation marks omitted); *see also Lorefice v. New York*, No. 21-CV-1367, 2022 WL 3577102 (N.D.N.Y. Aug. 18, 2022) (dismissing plaintiff's claim because "there [was] absolutely no affirmative factual support to be found in the complaint for any of [the p]laintiff's theories about the reasons for his termination" where plaintiff's gender discrimination claim was based purely on speculation and without any factual support), *aff'd*, No. 22-2037, 2023 WL 7271838 (2d Cir. Nov. 3, 2023); *Bockus v. Maple Pro, Inc.*, No. 19-CV-237, 2020 WL 5015432 (D. Vt. June 19, 2020) ("[E]ven giving [the plaintiff] the benefit of all reasonable inferences, none of the facts he alleges support his claim that he was terminated based on a stereotype that males accused of sexual harassment likely are guilty."), *aff'd*, 850 F. App'x 48 (2d Cir. 2021); *Singa v. Corizon Health*, Inc., No. 17-CV-448, 2018 WL 324884, at *4 (E.D.N.Y. Jan. 8, 2018) (dismissing plaintiffs discrimination claims because "her allegation is just a conclusion, without factual support.").

Finally, while Plaintiff does provide additional factual allegations regarding his transfer away from the Ambulatory Care Pavilion, these allegations are insufficient to demonstrate Defendants took adverse action against him because of his sex or race.  In its prior Opinion, the Court concluded that Plaintiff had not adequately alleged he was demoted when he was transferred from the Ambulatory Care Pavilion to the main operating room because his allegations exclusively relied on "his own personal beliefs" and did not assert the transfer "occurred on the basis of race or gender discrimination."  *Williams II*, 2024 WL 990153, at *9. In the TAC, Plaintiff attempts to bolster this allegation by alleging that the move away from the Ambulatory Care Pavilion severed "relationships" which would have been essential to his

promotion.  (*See* TAC ¶ 68.)  Even accepting the proposition that these allegations are sufficient

to show that the change in Plaintiff's working conditions were "adverse," Plaintiff still fails to

show that his transfer was the product of discrimination based on sex or race.  In fact, the TAC

suggests that Plaintiff was transferred to the main operating room because Defendants wanted to

separate Plaintiff and Steger, and Plaintiff offers no non-conclusory allegations to the contrary.

(*See* TAC ¶ 66–67); *see McBride v. C&C Apartment Mgmt. LLC*, No. 21-CV-2989, 2024 WL

4403701, at *8 (S.D.N.Y. Oct. 1, 2024) (granting summary judgement where the record

indicated that the transfer was a result of the plaintiff's deteriorating relationship with his

colleagues rather than discriminatory intent); *Fraser v. MTA Long Island R.R.*, 295 F. Supp. 3d

230, 266–67 (E.D.N.Y. 2018) (concluding, at summary judgement, that there was no evidence

that gender animus—rather than plaintiff's interpersonal disputes with her subordinates—was the

cause of plaintiff's reassignment); *Jenkins v. Fischer*, No. 01-CV-754, 2002 WL 205674, at *8

(S.D.N.Y. Feb. 8, 2002) (declining to conclude defendants engaged in racial discrimination

where "[plaintiff] ha[d] not alleged that racial animus—as opposed to, for example, a personality

conflict between himself and his supervisors—gave rise to the negative employment

consequences he alleges.").

* * *

For the foregoing reasons, the Court concludes that Plaintiff has failed to cure the defects

in his race and sex discrimination claims, and thus dismisses those claims for the same reasons it

did in its previous two Opinions.  *See Williams II*, 2024 WL 990153, at *7–10; *Williams I*, 2022

WL 4485298 at *10–14.[1]

---

[1] The Court notes, as it did in its prior Opinions, that because the Plaintiff's claims fail to
state a plausible claim on the merits, it will not address the Parties' disputes regarding whether

2.   Retaliation Under Title VII, 42 U.S.C. §1981 and the NYSHRL

    a.   Timeliness/Failure to Exhaust

The Court must first determine whether Plaintiff's retaliation claims are time-barred

under Title VII or the NYSHRL.  Defendants argue that both Plaintiff's Title VII and NYSHRL

retaliation claims are procedurally barred because they are untimely.  (*See* Defs. Mem. 27 n.15.)

Specifically, Defendants assert that Plaintiff filed his charge with the EEOC no earlier than

December 9, 2020 and his NYSHRL notice of charge no earlier than January 28, 2021.  (*Id*. at 19

n.8, 20–21.)

    "A Title VII plaintiff must file a charge of discrimination with the EEOC either 180 or

300 days after an 'alleged unlawful employment practice occurred.'"  *Maynard v. Montefiore

Med. Ctr.*, No. 18-CV-8877, 2021 WL 396700, at *9 (S.D.N.Y. Feb. 4, 2021) (quoting 42 U.S.C.

§ 2000e–5(e)(1)).  "'In a State that has an entity with the authority to grant or seek relief with

respect to the alleged unlawful practice'—such as New York—the 300-day limit applies."  *Id*.

(quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002)).  A plaintiff must

also "file an action in federal court within 90 days of receiving a right-to-sue letter from the

agency."  *Cruz v. New York City Transit*, No. 24-CV-89, 2025 WL 209598, at *5 (S.D.N.Y. Jan.

16, 2025), *report and recommendation adopted sub nom. Cruz v. New York City Transit Auth.-

MTA*, 2025 WL 618557, at *5 (S.D.N.Y. Feb. 26, 2025).  "NYSHRL . . . claims are time-barred

unless filed within three years of the alleged discriminatory acts."  *Maynard*, 2021 WL 396700,

at *9 (internal citations and quotation marks omitted).

---

the claims were timely.  *Williams II*, 2024 WL 990153, at *10 n.9; *Williams I*, 2022 WL
4485298 at *19 n.28.

For purposes of Title VII, the statute of limitations "begins to run when each discrete discriminatory or retaliatory act occurs." *Franklin v. New York City Transit Auth.–MTA*, No. 18-CV-6436, 2021 WL 4710762, at *3 (S.D.N.Y. Oct. 8, 2021); *see also Mello v. Siena Coll.*, No. 15-CV-13, 2017 WL 1013077, at *11 (N.D.N.Y. Mar. 14, 2017) (same)*; James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 310 (E.D.N.Y. 2012) (same). Similarly, as to NYSHRL claims: "the statute of limitations under the NYSHRL begins to run when an 'employee receives a definite notice' that the employer will undertake an adverse action." *Kemp v. Regeneron Pharms., Inc.*, 117 F.4th 63, 70 (2d Cir. 2024) (quoting *Smith v. United Parcel Serv. of Am., Inc.*, 65 F.3d 266, 268 (2d Cir. 1995) (quotation marks omitted)); *see also Williams v. New York City Dep't of Educ.*, No. 19-CV-1353, 2019 WL 4393546, at *20 (S.D.N.Y. Aug. 28, 2019) (noting that "[r]etaliation claims under the NYSHRL and NYCHRL accrue on the date on which the retaliatory act is taken" and collecting cases).

Plaintiff alleges four colorable adverse actions for the purpose of his retaliation claims: (1) his termination on February 13, 2020, (2) his alleged transfer out of the Ambulatory Care Center on October 23, 2019, (3) Defendants' refusal to certify Plaintiff's employment for insurance purposes, and (4) Defendants' posting of a "Wanted Poster" after his termination. As discussed further below, Plaintiff's demotion is the only adverse action which plausibly pleads an instance of retaliation.

Plaintiff argues that his Title VII claim is timely because he alleges that his friend, an attorney, filed a handwritten charge with the EEOC on his behalf on November 25, 2020. (*See* Pl. Opp. 11.) As for the NYSHRL notice of claim issue, Plaintiff argues that his NYSHRL claims were tolled by (1) the hospital's posting of the "Wanted Poster" and (2) refusal to cooperate with Plaintiff's insurance claim. (*See id.* at 16.)

21

i.   <u>Materials Considered</u>

Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves" because "[t]o go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to [Rule] 56." *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002); *see also Doe v. County of Rockland*, No. 21-CV-6751, 2023 WL 6199735, at *1 (S.D.N.Y. Sept. 22, 2023) (same).  "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment." *Thomas*, 232 F. Supp. 2d at 275; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . . [including] documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (quotation marks omitted)); *Hu*, 927 F.3d at 88 ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'" (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993) (alteration adopted))).

Nevertheless, the Court is permitted to consider factual allegations made by pro se plaintiffs in their opposition papers.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion."); *Samuels v. Cornell Tech*, No. 24-CV-1946, 2025 WL 753955, at *1 & n.1 (S.D.N.Y. Mar. 10, 2025) (same); *William v. N.Y.C. Dep't of Educ.*, No. 18-CV-11621, 2020 WL 906386, at *1 n.1 (S.D.N.Y. Feb. 25, 2020) ("Because Plaintiff is pro se,

the Court may—and will here—consider allegations made in her opposition papers." (italics

omitted)). Thus, the Court is permitted to consider the allegation raised in Plaintiff's Opposition

that he filed his EEOC charge on November 25, 2020, (*see* Pl. Mem. 11), regardless of whether it

was raised in the TAC or its accompanying documents, *see Sheppard v. Leuze*, No. 21-CV-2075,

2022 WL 2315981, at *1 (E.D.N.Y. June 27, 2022) (considering facts raised by the plaintiff in

their opposition).

### ii.   Title VII and Section 1981

The Court next considers whether Plaintiff's Title VII claims were timely filed, or

whether Plaintiff's claims are time-barred.

"Exhaustion of administrative remedies through the EEOC is an essential element of the

Title VII . . . statutory scheme[] and, as such, a precondition to bringing such claims in federal

court." *See Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 437

(S.D.N.Y. 2023) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d

Cir. 2001) (quotation marks and citation omitted)). As noted, "[a]n employment discrimination

claim must be filed with the EEOC within 300 days of the alleged discrimination in a state, like

New York, with a fair employment agency." *Buon*, 65 F.4th at 77 (quoting *Pikulin v. City Univ.

of N.Y.*, 176 F.3d 598, 599 (2d Cir. 1999)).

Defendants argue that the EEOC charge was filed when Plaintiff signed the December 9,

2020 charge. (*See* Defs. Mem. 19 n.8 (citing to Schudroff Decl. II, Ex. 1 ("Dec. 9 EEOC

Charge") (Dkt. No. 85-1).) However, Plaintiff argues that he attempted to submit a handwritten

version of the form on November 25, 2020. (*See* Pl. Opp. 11–12.) For the reasons described

previously, the Court will take Plaintiff's allegation as true. November 25, 2020 is 287 days

after February 12, 2020, the day of Plaintiff's termination.

However, while Plaintiff¶ 's EEOC charge was timely filed as to his claim of termination, the allegations—even liberally construed—do not permit the Court to find that Plaintiff's claim of demotion was timely filed.  Plaintiff claims his demotion occurred on October 23, 2019.  (*See* TAC ¶ 67.)  Based on Plaintiff's allegations, his EEOC charge was filed 399 days after the demotion, and therefore the claim is barred.  *See Starks v. Metro. Transportation Auth*., No. 20-CV-9569, 2022 WL 814668, at *4 (S.D.N.Y. Mar. 17, 2022) (concluding the plaintiff's claims were time-barred where she filed her claim more than 300 days after the alleged Title VII violation occurred); *Mula v. AbbVie, Inc*., No. 15-CV-6563, 2018 WL 501277, at *3 (W.D.N.Y. Jan. 22, 2018) (same).

Nor does the doctrine of relatedness protect Plaintiff from this bar.  The doctrine of relatedness states that "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency."  *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003); *see also Buon*, 65 F.4th at 77.  A claim is "reasonably related" if, inter alia, "the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination."  *Kirkland-Hudson*, 665 F. Supp. 3d at 438 (quoting *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002)).  However, the Supreme Court held unequivocally in *Nat'l Railroad Passenger Corp. v. Morgan*, that antecedent retaliatory acts cannot be made timely by virtue of their relatedness to another, timely act of retaliation.  *See* 536 U.S. at 113–15.  For this reason, Plaintiff's claim of demotion cannot serve as the basis for his Title VII retaliation complaint. *See Espinoza v. Port Auth. of NY & NJ*, No. 19-CV-258, 2022 WL 623809, at *5 (S.D.N.Y. Mar. 2, 2022) (barring as untimely any of the plaintiff's claims of retaliation "premised on actions prior" to the 300-day mark), *aff'd sub nom. Rosado v. Port Auth. of New York & New Jersey*, No. 22-587, 2024 WL 658776 (2d Cir. Feb. 16,

24

2024); *Roache v. Long Island R.R.*, 487 F. Supp. 3d 154, 169–70 (E.D.N.Y. 2020) (denying as time-barred a plaintiff's attempts to reach back to discriminatory acts occurring outside of the statutory period); *Gilford v. NYS Off. of Mental Health*, No. 17-CV-8033, 2019 WL 1113306, *6 n.3 (S.D.N.Y. Mar. 11, 2019) ("To the extent the Title VII claim is premised on discrete acts of retaliatory conduct that occurred outside the limitations period . . . [the plaintiff] may not assert claims on the basis of those time-barred acts in any amended complaint.").

 Nevertheless, the Court finds that at least some of Plaintiff's claims may proceed under Section 1981. Section 1981 does not have an exhaustion requirement, instead, all that is required for a timely claim under Section 1981 is that it fall within the four-year statute of limitations. *See Mitchell v. Planned Parenthood of Greater New York, Inc*., 745 F. Supp. 3d 68, 102 (S.D.N.Y. 2024) (applying a four-year statute of limitations to the plaintiff's Section 1981 retaliation claims); *Kirkland-Hudson*, 665 F. Supp. 3d at 447–48 (holding that the plaintiff's Section 1981 claim was subject to Section 1983's four-year statute of limitations and collecting cases). Plaintiff alleges he was demoted on October 23, 2019, and he filed the instant Action on April 27, 2021. (*See* Dkt. No. 1.) Because that is less than four years, a Section 1981 retaliation claim is not time-barred.

 However, Section 1981 only protects against retaliation on the basis of race. *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) ("It is also settled that Section 1981 does not prohibit discrimination on the basis of gender or religion"); *see also Valerio v. City of New York*, No. 18-CV-11130, 2020 WL 353749, at *6 (S.D.N.Y. Jan. 21, 2020) (noting that Section 1981 claims are "identical to those of *race*-based discrimination under Title VII." (emphasis added)). Therefore, Plaintiff's retaliation claims under Section 1981 must be dismissed to the extent they are premised on a theory of gender-based retaliation. *See Gordon-Mallett v. Mount Sinai Hosps.*

25

*Grp., Inc.*, No. 22-CV-1159, 2024 WL 1513910, at *20 (S.D.N.Y. Apr. 8, 2024) (dismissing a plaintiff's retaliation claim because she failed to allege race-based retaliation); *Rolley-Radford v. Mod. Disposal Servs., Inc.*, No. 21-CV-1229, 2023 WL 5105418, at *5 (W.D.N.Y. Aug. 9, 2023) (same). Thus, only Plaintiff's allegations of race-based retaliation can go forward under Section 1981.

iii.   <u>Timeliness of Plaintiff's NYSHRL Claims Against WCHCC</u>

Defendants argue that Plaintiff's NYSHRL retaliation claims against Defendant WCHCC are untimely because Plaintiff did not file a notice of claim until February 20, 2021. (*See* Defs. Mem. 20–21 (citing Schudroff Decl. II, Ex. 2 ("Notice of Claim") 4 (Dkt. No. 85-2)).)[2] Plaintiff responds that his claims were timely because (i) Governor Cuomo issued Executive Order No. 202.72, tolling the filing deadline between March 20, 2020 and November 3, 2020; and (2) Defendants' retaliatory actions continued "well into the summer of 2020," and therefore were tolled until November 3, 2020. (*See* Pl. Opp. 15–16.)

The New York Court of Appeals squarely held, in *Margerum v. City of Buffalo*, 24 N.Y.3d 721 (N.Y. 2015), that the Notice of Claim requirement of N.Y. Gen. Mun. Law § 50-e(1)(a) does not apply to NYSHRL claims of employment discrimination. *See id.* at 730 (holding that notice-of-claim requirements set forth in sections 50-e and 50-i do not apply in "an action based on the Human Rights Law" against a municipality); *see also Richard v. New York City Dep't of Educ.*, No. 16-CV-957, 2022 WL 4280561, at *15 n.16 (E.D.N.Y. Sept. 15, 2022)

---

[2] The Court considers Plaintiff's Notice of Claim incorporated by reference in the TAC, because Plaintiff's Complaint references the Notice of Claim "clearly and substantially." (*See* TAC ¶¶ 193, 225, 280.) Furthermore, Plaintiff does not dispute the accuracy of the Notice of Claim. (*See generally* Pl. Opp.) Nor could he, because he relies on it in both the TAC and his Opposition to the Motion. (*See* TAC ¶¶ 193, 225, 280; Pl. Opp. 11–12.)

26

(noting "that General Municipal Law § 50-e applies only to tort claims and does not apply to employment discrimination claims under the NYSHRL and NYCHRL" and collecting cases); *Pohlman v. Vill. of Freeport*, No. 19-CV-5277, 2020 WL 5878257, at \*5 (E.D.N.Y. Sept. 30, 2020) (finding "that N.Y. Gen. Mun. L. § 50-i and § 50-e do not apply to employment discrimination claims, including those under the NYHRL . . . . ").  Therefore, Plaintiff's NYSHRL claims may go forward.

b.  <u>Substantive Retaliation Analysis</u>

In its prior Opinions, the Court concluded that Plaintiff had failed to state a claim for retaliation because he had failed to plausibly allege that there was a causal connection between his protected activity and any alleged adverse action taken against him.  *See Williams II*, 2024 WL 990153, at \*12–13; *Williams I*, 2022 WL 4485298 at \*17–19.

As noted in its prior Opinions, a prima facie claim of retaliation requires Plaintiff to demonstrate "that '(1) [he] engaged in a protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Williams I*, 2022 WL 4485298, at \*14 (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013)).  That standard is the same under Section 1981.  *See Sherman v. Fivesky, LLC*, No. 19-CV-8015, 2020 WL 2136227, at \*7 (S.D.N.Y. May 5, 2020) (noting that "[t]he standard is the same for retaliation claims brought under Title VII and 42 U.S.C. § 1981." (internal citations omitted)); *Sutter v. Dibello*, No. 18-CV-817, 2019 WL 4195303, at \*19 (E.D.N.Y. Aug. 12, 2019) (noting that "the standard for pleading discrimination, retaliation, and hostile work environment under Section 1981 is essentially the same as the standard under Title VII . . . ."), *report and recommendation adopted*, 2019 WL 4193431 (E.D.N.Y. Sept. 4, 2019).

For the following reasons, the Court concludes that Plaintiff has stated a claim for retaliation in violation of Section 1981 and the NYSHRL (but only as to individual defendants).

i. <u>Protected Activity</u>

In its Opinion dismissing the FAC, the Court held that Plaintiff had successfully alleged one protected activity—the informal verbal complaint Plaintiff made to Defendant Yoakum. *Williams I*, 2022 WL 4485298, at *16–17. In that Opinion, the Court considered several events:

> (1) Plaintiff made an informal, verbal complaint to an on-duty nurse about the [altercation with Steger] the day it occurred, which Steger interrupted; (2) Plaintiff made an informal, verbal complaint to Yoakum regarding the [altercation with Steger]; (3) Plaintiff filed a formal complaint with Human Resources regarding the [altercation with Steger] "two days later"; (4) Plaintiff "filed another complaint around October 23, 2019" after Plaintiff was scheduled to work with Steger again; (5) Plaintiff made an informal, verbal complaint in the form of a conversation with an unnamed manager who essentially stated his complaint [regarding the altercation with Steger] would not alter the status quo "because it was a female world"; and (6) Human Resources refused to respond to emails regarding the misconduct or to speak with him directly.

*Id.* at *15 (quoting Mem. of Law in Opp. to Mot. to Dismiss ("Pl. Mem., MTD I") (Dkt. No. 37)). The Court concluded that of these events, only the first two were sufficiently specific. *See id.* Furthermore, the Court held that the first event—Plaintiff's informal complaint to the nurse on duty at the time of his dispute with Steger—only suggested he had complained of "unprofessional conduct," which is insufficient to demonstrate protected activity. *See id.* at *16; *see also Roman-Malone v. City of New York,* No. 11-CV-8560, 2013 WL 3835117, at *8 (S.D.N.Y. July 25, 2013) (noting that in the context of a retaliation claim, complaints about "'unprofessional conduct' [are] not statutorily prohibited."); *accord Qorrolli v. Metro. Dental Assocs.*, No. 23-282, 2024 WL 5194887, at *3 (2d Cir. Dec. 23, 2024) ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at

28

conduct prohibited by [Section 1981]" (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998))).

The Court concluded that Plaintiff's "informal, verbal complaint to Yoakum regarding the incident" constituted protected activity. *Williams I*, 2022 WL 4485298, at *16. In drawing this conclusion, the Court inferred that Plaintiff told Yoakum about *all* of Steger's alleged threats, including her threat to get him fired after making racially charged statements towards him. *Id.* That is, Plaintiff told Yoakum that Steger had threatened to take adverse action against him (get him fired) for discriminatory reasons (on the basis of his race). *See id.*

In its second Opinion dismissing the SAC, the Court again held that that lone event constituted a "protected activity." *See Williams II*, 2024 WL 990153, at *10–12. The Court held that while the SAC provided additional information as to the events Plaintiff claimed constituted protected activity, this new information failed to demonstrate that Plaintiff had complained about discrimination, rather than mere unprofessional conduct. *See id.* at *10–12. Specifically, the Court analyzed Plaintiff's complaints to HR, which were appended as exhibits to the SAC. *See id.* at *11. The Court concluded that Plaintiff's emails to HR failed to raise—explicitly or indirectly—the issue of race, and thus could not constitute protected activity. *See id.* (citing *Harris v. Off. of New York State Comptroller*, No. 20-CV-8827, 2022 WL 814289, at *17 (S.D.N.Y. Mar. 17, 2022); *Ramirez v. Temin & Co., Inc.*, No. 20-CV-6258, 2021 WL 4392303, at *15 (S.D.N.Y. Sept. 24, 2021); and *Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256, 2021 WL 4434935, at *30 (S.D.N.Y. Sept. 23, 2021)).

In the TAC, Plaintiff alleges new facts relating to protected activity: (1) he alleges that he also reported "the full breath [sic] of Ms. Steger['s] disrespectful and racist statement" to Sherri Witkins and another staff supervisor after he explained the situation to Defendant Yoakum,

29

(TAC ¶ 54) and (2) he alleges that after he sent his email complaint to HR, a member of the HR staff, Joan Bramswig, called him to "discuss the incident at length, including the racist, sexist statements and how Ms. Steger threatened to get [Plaintiff] fired," (TAC ¶¶ 61–63).

Both allegations plausibly constitute protected activity, for much the same reason that Plaintiff's alleged informal complaint to Yoakum constitutes protected activity. As before, "drawing all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014), Plaintiff's allegation that he reported *everything* Steger said to Witkins, an unnamed staff supervisor, and Bramswig, plausibly alleges that he told them that Steger threatened to get him fired after making racially-charged statements towards him*, see Williams I*, 2022 WL 4485298, at *16. Thus, Plaintiff has plausibly alleged two additional events constituting protected activity. *See Austin v. Phone2Action, Inc.*, No. 21-CV-491, 2023 WL 6201409, at *7 (E.D.N.Y. Sept. 22, 2023) (holding that the plaintiff "demonstrated that she engaged in protected activity that [the d]efendant was aware of" when "she complained to the head of HR of differential treatment as compared to two of her male coworkers."); *Villetti v. Guidepoint Glob. LLC*, No. 21-CV-2059, 2022 WL 2525662, at *5 (2d Cir. July 7, 2022) (summary order) (concluding that plaintiff's complaint to HR constituted protected activity); *Cano v. SEIU Loc. 32BJ*, No. 19-CV-8810, 2021 WL 4927166, at *11 (S.D.N.Y. June 15, 2021) (concluding that the plaintiff's complaints to management regarding a coworker's harassing and abusive comments constituted protected activity), *report and recommendation adopted*, 2021 WL 4480274 (S.D.N.Y. Sept. 30, 2021); *Bernstein v. Mafcote*,

*Inc.*, No. 12-CV-00311, 2015 WL 5200084, at *2 (D. Conn. Sept. 4, 2015) (finding that

"plaintiff's complaints to management and HR, if proved, constitute protected activities.").[3]

ii.     Adverse Action

Plaintiff argues that Defendants took four retaliatory actions against him: (1) transferring

him to the main operating room—which he felt was a demotion; (2) terminating him; (3) putting

a "Wanted Poster" of him after his termination; and (4) failing to verify his employment for his

no fault insurance claim.  (*See* Pl. Opp. 43–46.)

To demonstrate that Defendants took "adverse action" sufficient to show retaliation,

Plaintiff must demonstrate that the action is "harmful to the point that it could well dissuade a

reasonable worker from making or supporting a charge of discrimination."  *Times v. Success*

*Acad. Charter Sch., Inc.*, No. 23-CV-3229, 2024 WL 5009166, at *13 (S.D.N.Y. Dec. 6, 2024),

*appeal pending*, No. 25-31, 2024 WL 5009166 (2d Cir. Jan. 6, 2025); *see also Gironda v.*

*Shoreham-Wading River Cent. Sch. Dist.*, No. 19-CV-4301, 2023 WL 2710359, at *11

(E.D.N.Y., Mar. 30, 2023) (same).  "An adverse employment action is a materially adverse

change in the terms and conditions of employment that is more disruptive than a mere

inconvenience or an alteration of job responsibilities."  *Wallace v. Crab House, Inc.*, No. 21-CV-

5757, 2023 WL 2477819, at *9 (S.D.N.Y. Mar. 13, 2023) (quoting *Demoret v. Zegarelli*, 451

---

[3]  The Court notes, again, that despite Plaintiff's continued allegation that Defendants
retaliated against him for attempting to apply for FMLA leave, he has not alleged sufficient
evidence to connect these allegations to protected activity under Title VII or the NYSHRL.
Applying for FMLA leave is not, on its face, a complaint about discrimination, and is therefore
not clearly protected activity.  *See Williams II*, 2024 WL 990153, at *12 n.10 (concluding, as to
these claims, "Plaintiff does not plead how such conduct constitutes a complaint about
discrimination, and therefore, is a form of protected activity.").  Because the Court cannot
determine how the application could constitute a complaint about discrimination, and because
Plaintiff has offered no explanation supporting this allegation, the Court finds that Plaintiff's
application for FMLA leave is not itself protected activity.

31

F.3d 140, 151 (2d Cir. 2006) (alterations adopted)); *Gironda*, 2023 WL 2710359, at *11 (same);

*Sosa v. New York City Dep't of Educ.*, 819 F. App'x 30, 34 (2d Cir. 2020) ("A transfer that does

not change the conditions of employment is a mere inconvenience or an alteration of job

responsibilities, and hence is not materially adverse" (quoting *Kessler v. Westchester Cty. Dep't

of Soc. Servs.*, 461 F.3d 199, 207 (2d Cir. 2006) (alterations adopted)).  "In the context of

[Section 1981] discrimination claims, examples of materially adverse changes include

termination of employment, a demotion evidenced by a decrease in wage or salary, a less

distinguished title, a material loss of benefits, significantly diminished material responsibilities,

or other indices unique to a particular situation.'"  *Arroyo-Horne v. City of New York*, No. 16-

CV-3857, 2018 WL 4259866, at *10 (E.D.N.Y. Sept. 5, 2018)  (alterations adopted) (internal

quotations and citations omitted); *see also Hornig v. Trs. of Columbia Univ. in City of New York*,

No. 17-CV-3602, 2022 WL 976267, at *16 (S.D.N.Y. Mar. 31, 2022) (same); *Sealy v. State

Univ. of New York At Stony Brook*, 408 F. Supp. 3d 218, 226 (E.D.N.Y. 2019) (same), *aff'd*, 834

F. App'x 611 (2d Cir. 2020).

There is no question that termination is an "adverse action."  *Murray v. Dutchess Cnty.

Exec. Branch*, No. 17-CV-9121, 2019 WL 4688602, at *13 (S.D.N.Y. Sept. 25, 2019)

("[Defendant's] termination of Plaintiff . . . clearly constitutes adverse employment action");

*Jones v. Target Corp.*, No. 15-CV-4672, 2016 WL 50779, at *8 (E.D.N.Y. Jan. 4, 2016) (holding

the same and collecting cases).  However, as noted below, Plaintiff's termination cannot be the

basis for his retaliation claim, because he has failed to allege that he was terminated *because of*

his protected activity.

A transfer, even absent a demotion in title, can constitute a materially adverse action.

*Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 555 (2d Cir. 2010) ("[A] lateral job transfer that does

not affect an employee's salary or title may be the basis for a [Section 1981] retaliation claim only if the reassignment would have been viewed by a reasonable employee as being materially adverse."); *Hoag v. Fallsburg Cent. Sch. Dist.*, 279 F. Supp. 3d 465, 478 (S.D.N.Y. 2017) (same). In its prior Opinion, the Court suggested that the SAC failed to demonstrate that Plaintiff's transfer to the main operating room constituted an adverse employment action because Plaintiff simply alleged that he personally felt the transfer was a demotion. *See Williams II*, 2024 WL 990153, at *9 (finding that "[P]laintiff's 'feelings and perceptions of being discriminated against are not evidence of discrimination.'" (citation omitted)). The TAC provides new allegations suggesting that Plaintiff's transfer to the main operating room constituted a material change in benefits because it would limit his relationship with the doctors in the Ambulatory Care Center, doctors who are well-respected, and therefore could have been instrumental in his promotion. (*See* TAC ¶¶ 68–70.)

While Plaintiffs allegations are "quite thin," the Court interprets them in light of the lenient pleading standards Plaintiff faces at this stage. *See Walker v. Metro N. Commuter R.R.*, No. 23-CV-9883, 2024 WL 4266261, at *6–7 (S.D.N.Y. Sept. 23, 2024) (denying motion to dismiss the plaintiff's retaliation claims and noting "[the plaintiff] has a low bar to clear at the pleading stage of a [Section 1981] complaint"); *cf. Berger v. New York State Off. for People with Developmental Disabilities*, No. 16-CV-1277, 2019 WL 4805389, at *4 (N.D.N.Y. Sept. 30, 2019) (concluding the plaintiff's Title VII discrimination claims survived the defendants' motion to dismiss even though they were "quite thin").

Plaintiff has alleged facts which meet this burden: namely, that his transfer from the Ambulatory Care Center impinged on relationships with well-respected doctors, and that in the context of the relationship-oriented nature of work in operating rooms, this change materially

impacted his opportunities for professional development.  (*See* TAC ¶¶ 68–70.)  Taking these allegations as true, as the Court must do at this stage in the litigation, Plaintiff has sufficiently alleged that his transfer constituted a demotion, and thus an adverse action.  *See Ellis v. Kerik*, No. 00-CV-6045, 2007 WL 9706849, at *9 (E.D.N.Y. Sept. 25, 2007) (concluding that the defendant had engaged in adverse employment action where the plaintiffs were transferred to positions "that afforded them fewer opportunities for networking and other forms of professional advancement."); *see also de la Cruz v. New York City Hum. Res. Admin. Dep't of Soc. Servs*., 82 F.3d 16, 21 (2d Cir. 1996) (holding that a triable issue of fact existed where the plaintiff alleged that he was moved from an "elite" division that "provided prestige and opportunity for advancement" to a "less prestigious unit with little opportunity for professional growth.").  Therefore, Plaintiff has met his burden as to this element of retaliation.

        The Court need not address whether the Wanted Poster and the refusal to verify Mr. William's employment were adverse actions because, as discussed below, Plaintiff has not adequately pled causation.  *See Sotolongo v. New York State Dep't of Motor Vehicles*, No. 19-CV-3282, 2020 WL 4261194, at *4 (E.D.N.Y. July 24, 2020) (finding that the court "need not decide whether [the plaintiff] has properly plead material adverse employment actions" because "[the plaintiff] ha[d] failed to adequately plead causation"); *Arroyo-Horne v. New York City Police Dep't*, No. 16-CV-3857, 2016 WL 8711061, at *12 (E.D.N.Y. Dec. 9, 2016) (noting that "the [c]ourt need not determine whether any of [the d]efendants' acts, individually or in the aggregate, constitute adverse employment actions because, . . . [the p]laintiff has not shown a causal connection . . . ").

iii.    <u>Causation</u>

To demonstrate that he suffered retaliation, Plaintiff is required to show that a causal relationship existed between Plaintiff's protected activity and Defendants' adverse action. *See Williams I*, 2022 WL 4485298, at *14.

> A causal connection in retaliation claims can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."

*Medina v. AAM 15 Mgmt. LLC*, --- F. Supp. 3d ----, 2024 WL 4307816, at *13 (S.D.N.Y. Sept. 26, 2024) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015)). "The Second Circuit has long held that a close temporal relationship between a plaintiff's participation in protected activity and a defendant's adverse actions can be sufficient to establish causation." *Id*. (alterations adopted) (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002)).

As to the claim of termination, Plaintiff's claim fails for the same reasons it did under the FAC and the SAC: the intervening time between Plaintiff's protected activity and his termination (i.e., the four months between his October 2019 dispute with Steger and his February 2020 firing) is too long to support the circumstantial inference that Defendants terminated Plaintiff *because of* his protected activity. *Williams I*, 2022 WL 4485298, at *17–18 (concluding that Plaintiff had failed to demonstrate a causal connection between his protected activity and the adverse action because "a greater than three-month gap, unsupported by any other allegations showing plausible retaliation, is insufficient to raise an inference of retaliation and thereby defeat a Rule 12(b)(6) motion to dismiss." (alterations adopted) (internal citations and italics omitted)); *Williams II*, 2024 WL 990153, at *13 (holding that a four-month period between Plaintiff's protected activity and alleged adverse action failed to "allege a causal connection by indirect or circumstantial facts").

Similarly, Plaintiff's claims regarding the Wanted Poster and the failure to verify employment occurred well after Plaintiff's protected activity.  (*See* Pl. Opp. 35 (indicating the Wanted Poster was posted after the termination). 52 (indicating Plaintiff's requested No Fault Insurance on or after February 18, 2020).)  Because these allegations arose at *least* three months after Plaintiff's alleged protected activity, they fail to raise an inference of retaliation.  *Rettino v. New York City Dep't of Educ.*, No. 19-CV-5326, 2021 WL 2987113, at *5 (S.D.N.Y. July 15, 2021) (noting that "[t]emporal proximity alone between the plaintiff's protected activity and the alleged retaliatory action is generally insufficient to establish causation after about three months." (internal citations and quotations omitted)); *Brown v. New York City Transit Auth.*, No. 22-CV-2949, 2024 WL 1347283, at *14 (S.D.N.Y. Mar. 29, 2024) (finding a "gap of three months between the October 2019 post and the investigation also makes causality unlikely").

As to Plaintiff's alleged demotion, the Court concludes that the temporal proximity between Plaintiff's protected activity and his alleged demotion is sufficiently close to act as circumstantial evidence of causation.  Plaintiff alleges that his protected activity, namely his complaints to Yoakum and to HR, occurred on October 14, 2019 and October 16, 2019, respectively.  (*See* TAC ¶¶ 52, 60.)  His alleged demotion occurred two weeks later, on October 23, 2019.  (*See* TAC ¶ 67.)  This is sufficient to plausibly support an indirect inference of causation.  *See Feingold v. New York*, 366 F.3d 138, 156–57 (2d Cir. 2004) (holding two weeks sufficient to create an inference of causation, in the context of a prima facie case of retaliation); *Moore v. Hadestown Broadway Ltd. Liab. Co.*, 722 F. Supp. 3d 229, 256 (S.D.N.Y. 2024) (holding a two week period between protected activity and adverse action "comfortably within the range of time sufficient to support an indirect causal nexus."); *Claud v. Brown Harris Stevens of Hamptons, LLC*, 676 F. Supp. 3d 100, 129 (E.D.N.Y. 2023) (holding a two week period

36

between protected activity and adverse action "clearly close enough in time . . . to infer an indirect causal connection between the two events.").

***

In sum, the Court holds that Plaintiff has adequately stated a claim for race-based retaliation in connection with his October 23, 2019, demotion under Section 1981 and for race- and gender-based retaliation in connection with his October 23, 2019, demotion under the NYSHRL. However, the Court grants Defendants' Motion as to Plaintiff's Title VII retaliation claims as untimely.

### 3. FMLA Interference Claim

In its prior Opinions, the Court dismissed Plaintiff's FMLA interference claim, holding that Plaintiff failed to plausibly allege that he was entitled to FMLA leave. *Williams II*, 2024 WL 990153, at *14–16; *Williams I*, 2022 WL 4485298, at *20–21.

As noted in the Court's previous Opinion, "[t]o establish an interference claim pursuant to 29 U.S.C. § 2615(a)(1), a plaintiff need only prove that an 'employer in some manner impeded the employee's exercise of his or her rights' protected . . . by the FMLA." *Williams II*, 2024 WL 990153, at *14 (quoting *Crosby v. Stew Leonard's Yonkers LLC*, 695 F.Supp.3d 551, 576 (S.D.N.Y. 2023) (alteration adopted)). To demonstrate a claim of FMLA interference, "a plaintiff must establish that: (1) 'he is an eligible employee under the FMLA'; (2) the defendant is 'an employer as defined by the FMLA'; (3) the plaintiff 'was entitled to take leave under the FMLA'; (4) the plaintiff gave the employer notice of his or her intention to take leave; and (5) the plaintiff 'was denied benefits to which he was entitled under the FMLA.'" *Id.* (alterations adopted) (quoting *Williams I*, 2022 WL 4485298, at *19); *see also Patel v. NYU Langone Hosps.*, No. 20-CV-112, 2021 WL 4852426, at *3 (2d Cir. Oct. 19, 2021) (summary order)

37

(applying the same five-factor test); *Boncoeur v. Haverstraw-Stony Point Cent. Sch. Dist.*,

No. 20-CV-10923, 2022 WL 845770, at *12–13 (S.D.N.Y. Mar. 22, 2022) (same).

Defendants do not appear to contest elements (1), (2) and (5). (*See generally* Defs.

Mem.) Defendants dispute: (3) that Plaintiff was ever entitled to take FLMA leave; (4) that

Plaintiff ever requested leave. Defendants also argue that the Individual Defendants can be held

liable pursuant to the FMLA. (*See* Defs. Mem. 31–33; *id*. at 33 n.19.)

### a. Entitlement to Leave

As noted in the Court's prior Opinions, "[a]n eligible employee is entitled to FMLA

leave, inter alia, 'because of a serious health condition that makes the employee unable to

perform the functions of the position of such employee.'" *Williams II*, 2024 WL 990153, at *14

(quoting *Williams I*, 2022 WL 4485298, at *20). The Court also noted that "[c]ourts in this

district have relied on Department of Labor ["DOL"] regulations to determine whether a

plaintiff's injury satisfies the FMLA's definition of a 'serious health condition. Under DOL

regulations, there are several independent bases that can satisfy this definition." *Id*. (quoting

*Williams I*, 2022 WL 4485298, at *20 (internal citations omitted)). Two of these definitions are

relevant in this Action:

> (a) Incapacity and treatment. A period of incapacity of more than three consecutive, full
> calendar days, and any subsequent treatment or period of incapacity relating to the same
> condition, that also involves:
>
> (1) Treatment two or more times, within [thirty] days of the first day of incapacity, unless
> extenuating circumstances exist, by a health care provider, by a nurse under direct
> supervision of a health care provider, or by a provider of health care services (e.g.,
> physical therapist) under orders of, or on referral by, a health care provider; or
>
> (2) Treatment by a health care provider on at least one occasion, which results in a
> regimen of continuing treatment under the supervision of the health care provider.
>
> (3) The requirement in paragraphs (a)(1) and (2) of this section for treatment by a health
> care provider means an in-person visit to a health care provider. The first (or only) in-
> person treatment visit must take place within seven days of the first day of incapacity.

(4) Whether additional treatment visits or a regimen of continuing treatment is necessary within the [thirty]–day period shall be determined by the health care provider.

(5) The term extenuating circumstances in paragraph (a)(1) of this section means circumstances beyond the employee's control that prevent the follow-up visit from occurring as planned by the health care provider. Whether a given set of circumstances are extenuating depends on the facts. For example, extenuating circumstances exist if a health care provider determines that a second in-person visit is needed within the [thirty]–day period, but the health care provider does not have any available appointments during that time period.

...

(c) Chronic conditions. Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

(1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;

(2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.115(a), (c).

The Court noted previously that Plaintiff's claims did not involve "'chronic' pain or symptomatology, nor do they exhibit the hallmarks of such afflictions." *Williams II*, 2024 WL 990153, at \*15 (quoting *Williams I*, 2022 WL 4485298, at \*20.) In *Williams II*, the Court also noted that the SAC failed to allege "that Plaintiff's pain required 'periodic visits (defined as at least twice a year) for treatment . . . over an extended period of time (including recurring episodes of a single underlying condition)'" and therefore spoke "to a continuous incapacity under sub-section (a)." *See id.* (italics omitted). Plaintiff has not amended the TAC to add further factual allegations regarding his chronic condition, and therefore the Court finds—again—that his claims "speak[] to a continuous incapacity." *Id.*

As noted in the Court's prior Opinion, Plaintiff adequately alleges that he meets "the first requirement of demonstrating a serious health condition, that Plaintiff suffer '[a] period of incapacity of more than three consecutive, full calendar days.'" *Id*. (citing 29 C.F.R. § 825.115(a).  However, "Plaintiff must also show either that he received 'subsequent treatment or suffered a period of incapacity relating to the same condition.'" *Id.* (citing 29 C.F.R. § 825.115(a) (alterations adopted) (italics omitted)).

> He could do so by stating that he received "treatment two or more times, within thirty days of the first day of incapacity," or "treatment by a health care provider on at least one occasion, which resulted in a regimen of continuing treatment under the supervision of the health care provider."

*Id.* (citing 29 C.F.R. § 825.115(a)(1)–(2) (alterations adopted)).

The Court previously concluded that Plaintiff's SAC did not satisfy either definition, because: (i) he had not adequately alleged he was treated for the same condition two or more times within the first thirty days of his incapacity, and (ii) he did not allege "that any of his doctor's visits led to 'a regimen of continuing treatment under the supervision of the health care provider.'" *See id*. at *16 (citing 29 C.F.R. § 825.115(a)(2)).  As in the FAC and SAC, Plaintiff alleges that following his December 15, 2019, car accident, he suffered from a period of incapacity from January 29, 2020, to February 8, 2020.  (*See* TAC ¶ 89.)  However, in the TAC, Plaintiff does amend his allegations to clarify the connection between his various doctor's visits in the month following his first day of incapacity.  On February 3, 2020, Plaintiff visited CityMD complaining of "nagging discomfort from the accident, which resulted in pain in his arms, neck, and back as well as limited mobility and strength."  (*Id*. at ¶ 91.)  He was diagnosed with the stomach flu, and told that the pain in his arms, neck, and back could have been caused by the virus.  (*See id.* at ¶ 93.)  Thus, Plaintiff alleges that his car accident injuries were conflated with the symptoms of his stomach flu.  On February 6, 2020, Plaintiff went to Urgent Care, and

40

explained that he was in pain in his arm, neck, and back, which was "diagnosed [as] tendinitis of the arm, back and shoulders." (*Id.* at ¶ 99.) On February 18, 2020, Plaintiff again visited a doctor, who referred him to a specialist for "neck pain and pain in his right lower leg radiating [from] back." (*See* TAC ¶ 106.)

Unlike the FAC and SAC, Plaintiff's allegations in the TAC sufficiently describe and connect each of his doctor's visits in the month following the onset of his incapacity. Each visit was, at bottom, an examination of the same underlying issue: the neck, back, and arm pain which resulted from Plaintiff's car accident. Taking Plaintiff's allegations as true and construing all inferences in his favor, the Court concludes that Plaintiff was treated for the same condition two or more times within the first thirty days of his incapacity. *See* 29 C.F.R. § 825.115(a)(1). He therefore adequately alleges that he suffered from a "serious health condition" within the meaning of the FMLA. *See Drepaul v. Wells Fargo Bank, N.A.,* No. 23-CV-123, 2024 WL 127402, at *7 (D. Conn. Jan. 11, 2024) (holding that the plaintiff adequately alleged she suffered from a "serious health condition" where she had two doctor's visits for the same underlying condition—brain fog—within a 30-day time period); *Barber v. Von Roll U.S.A., Inc.*, No.14-CV-907, 2015 WL 5023624, at * 8 (N.D.N.Y. Aug. 25, 2015) (holding that the plaintiff sufficiently alleged they had a serious medical condition where the plaintiff visited a doctor twice for the same underlying condition—anxiety disorder—in a 30 day period).

#### b. <u>Request for Leave</u>

Defendants also argue, albeit briefly, that Plaintiff did not request FMLA leave at all. (*See* Defs. Mem. 33.) The Court assumes that Defendants mean to argue that because Plaintiff did not file a completed FMLA application, there can be no plausible interference claim.

In order to state a claim for FMLA interference, all that is required is that "an employee has provided sufficient notice to his employer if that notice indicates reasonably that the FMLA may apply," and, in fact, the employee "need not expressly assert rights under the FMLA or even mention the FMLA." *Coutard v. Mun. Credit Union*, 848 F.3d 102, 111 (2d Cir. 2017); *see also Neron v. Amedisys Holding, LLC*, No. 22-CV-469, 2024 WL 1072578, at *6 n.2 (D. Conn. Mar. 12, 2024) (discussing the standard from *Coutard*); *Macropoulos v. Metro. Life Ins. Co.*, No. 15-CV-6096, 2018 WL 1508564, at *13 (S.D.N.Y. Mar. 26, 2018) (same).

The notice allegedly provided by Plaintiff in this case is adequate to meet this standard. Plaintiff alleges he "always kept his supervisors in the loop about the basis of his sick day usage." (*See* TAC ¶ 111; *see also id.* at ¶¶ 87–88, 112.)  Indeed, the TAC makes clear that Plaintiff told his supervisors that his persistent absences were the result of the neck and back pain related to his injuries from his car accident. (*See id.*)  Furthermore, the TAC alleges that Yoakum approached Plaintiff after he began filling out his FMLA leave request, saying: "you think you leaving . . . let me talk to you at 2:30PM in Kenneth Osario [sic] Office." (*See id. at ¶* 124.)  Construing all inferences in the light most favorable to Plaintiff, it is reasonable to infer that Yoakum was referring to Plaintiff's as-yet uncompleted FMLA application.  The sum of these allegations suggests that Defendants had sufficient notice that the FMLA may reasonably have been construed to apply to Plaintiff's requests for leave.  *Cf. Drepaul*, 2024 WL 127402, at *6–7 (concluding that the plaintiff had plausibly alleged that she provided notice where she alerted the defendant employer of her symptoms suggesting a serious health condition but did not formally request FMLA leave); *Ejiogu v. Grand Manor Nursing & Rehab. Ctr.*, No. 15-CV-505, 2017 WL 1184278, at *7 (S.D.N.Y. Mar. 29, 2017) (holding that the plaintiff had plausibly alleged that she provided notice where she detailed facts that would have made her eligible for

FMLA leave but did not formally request leave).  Plaintiff was not required to provide Defendants with a formal request in order to be protected against FMLA interference.

c. <u>Individual Liability</u>

Finally, Defendants argue that none of the Individual Defendants can be held liable under the FMLA because (i) the TAC "does not allege that Steger or Osario violated or otherwise interfered with Plaintiff's rights under the FMLA" and (ii) Yoakum did not have the power to hire and fire Plaintiff.  (*See* Defs. Mem. 33; *id*. at 33 n.19.)

Plaintiff nowhere alleges Steger's personal involvement in the incidents surrounding his request for FMLA leave.  (*See generally* TAC.)  As a result, his FMLA claims against Steger are dismissed.  *See Mitura v. Finco Servs., Inc.*, 712 F. Supp. 3d 442, 457 (S.D.N.Y. 2024) (dismissing FMLA claims against an individual defendant where the complaint did "not allege that [the individual defendant] was directly or indirectly involved in the violations"), *reconsideration denied*, 2024 WL 1160643 (S.D.N.Y. Mar. 18, 2024); *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 476 (S.D.N.Y. 2011) (same).

Turning to the claims against Yoakum and Osario, the Court first addresses whether either can be considered "employers" within the meaning of the FMLA. "An individual may be held liable under the FMLA only if she is an 'employer,' which is defined as encompassing 'any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer.'" *Greenberg v. State Univ. Hosp.-Downstate Med. Ctr.*, No. 15-CV-2343, 2019 WL 4752018, at *14 (E.D.N.Y. Sept. 29, 2019) (quoting *Graziadio v. Culinary Institute of Am.*, 817 F.3d 415, 422 (2d Cir. 2016) (quoting 29 U.S.C. § 2611(4)(A)(ii)(I))), *aff'd*, 838 F. App'x 603 (2d Cir. 2020).  Courts in the Second Circuit apply the "economic-reality test" to determine whether an individual can be held liable under the FMLA.  *Id*. at *14–15 (citing *Graziadio*, 817

F.3d at 422).  This test asks: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Id*. (citations omitted).  "However, the economic reality test is a factual inquiry that does not bear on the sufficiency of pleadings."  *Crawford v. Bronx Cmty. Coll.*, No. 22-CV-1062, 2023 WL 11862082, at *15 (S.D.N.Y. July 19, 2023) (alterations adopted) (quoting *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 475(S.D.N.Y. 2011)), *report and recommendation adopted*, 2024 WL 3898361 (S.D.N.Y. Aug. 21, 2024); *see also Sutter v. Dibello*, No. 18-CV-817, 2021 WL 930459, at *17 (E.D.N.Y. Mar. 10, 2021) (applying the same standard at the motion to dismiss stage).  "Thus, to survive a motion to dismiss, a plaintiff need not allege facts sufficient to satisfy the economic reality test; rather, [he] must simply 'plead that the proposed individual defendants had substantial control over the aspects of employment alleged to have been violated.'"  *Crawford*, 2023 WL 11862082, at *15 (quoting *Smith*, 769 F. Supp. 2d at 475–76).  "In the context of FMLA claims predicated upon requests for leaves of absence, individual liability 'extends to all those who controlled in whole or in part plaintiff's ability to take a leave of absence and return to [his] position.'"  *Id*. (quoting *Johnson v. A.P. Prods.*, 934 F. Supp. 625, 629 (S.D.N.Y. 1996)).

Plaintiff pleads sufficient facts to suggest that Yoakum and Osario had some control over the Plaintiff's FMLA interference claims.  Namely, Plaintiff claims that Yoakum and Osario classified his repeated absences as "unexcused," in spite of the fact that Plaintiff allegedly alerted both Defendants of his condition and the fact that he was applying for FMLA leave.  (*See* TAC ¶¶ 135, 142.)  Though Plaintiff's allegations are sparse, at this stage in the litigation, these allegations are sufficient to plausibly allege that Defendants bore individual responsibility for the

FMLA violations at issue. *Cf. Smith*, 769 F. Supp. 2d at 476 (concluding the plaintiff adequately alleged facts suggesting individual liability against defendants who had put him on "attendance review" while he took FMLA leave).

* * *

For these reasons, the Court denies Defendants' Motion to Dismiss Plaintiff's FMLA interference claims.

III.    <u>Conclusion</u>

For the reasons stated above, Defendants' Motion to Dismiss is granted in part and denied in part. Specifically, the Court grants Defendants' Motions as to Plaintiff's race and sex discrimination claims under Title VII, Section 1981 and the NYSHRL and dismisses Plaintiff's Title VII retaliation claim as untimely. These claims are dismissed with prejudice. *See Azzarmi v. Neubauer,* No. 20-CV-9155, 2024 WL 4275589, at *29 (S.D.N.Y. Sept. 24, 2024) (denying a pro se plaintiff leave to amend where the motion to dismiss their third amended complaint was granted in part and denied in part); *Graham v. HSBC Mortg. Corp.*, No. 18-CV-4196, 2021 WL 4392522, at *8 (S.D.N.Y. Sept. 24, 2021) (finding that, "[b]ecause this is the third adjudication of Plaintiffs' claims against Defendants on the merits, the claims are dismissed with prejudice."). Finally, the Court denies Defendants' Motion as to Plaintiff's Section 1981 and NYSHRL retaliation claims and his FMLA (except as to Steger).

The Court will hold a telephonic conference in this case on May 8, 2025 at 10 AM..

The Clerk of Court is respectfully directed to terminate the pending Motion. (Dkt. No. 81.)

45

SO ORDERED.

Dated:    March 25, 2025
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge